IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14CV155-RLV

| | |
|---|---|
| SWAN RACING COMPANY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM and ORDER** |
| ) | |
| XXXTREME MOTORSPORT, LLC ) | |
| JOHNATHAN COHEN, ) | |
| ) | |
| Defendants/Third-Party ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BRANDON DAVIS, ) | |
| ) | |
| Third-Party Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to Plaintiff's Ninth Claim for Relief. Additionally, Plaintiff moves to dismiss the Second and Third Claims for Relief in Defendants' amended counterclaim and third-party complaint for failure to state a claim under Rule 12(b)(6), and Third-Party Defendant Brandon Davis moves to dismiss all claims as against him in Defendants' amended counterclaim and third-party complaint.

**I. PROCEDURAL BACKGROUND AND RELEVANT FACTS**

**A. SALE OF THE #30 CAR**

Swan Racing Company, LLC ("Swan") is a limited liability company organized and existing under the laws of Colorado and is owned by Brandon Davis. (Compl., ¶1). XXXtreme

Motorsport, LLC ("XXXtreme") is a limited liability company with its principal place of business in Mooresville, North Carolina. (Compl., ¶2). XXXtreme is owned by Johnathan Cohen, who is a resident of New Jersey. (Compl., ¶3). In 2014, Swan Racing operated two racing teams, the #30 and #26 teams, which competed in the Sprint Cup Series of NASCAR. (Compl., ¶¶10-11). XXXtreme was also in the business of racing cars in the Sprint Cup. (Compl. ¶¶5-6). In April, 2014, Swan decided to discontinue its operations and liquidate its remaining assets. (Compl., ¶12). On April 21, 2014, Swan agreed to sell the #30 racing team to XXXtreme Motorsport. (Compl., ¶15). At this stage, the parties disagree as to the terms of the contract. Swan claims that XXXtreme agreed to pay $200,000.00 in monthly payments equal to ten percent of the prize money earned by the car bearing the #30. (Compl., ¶16). According to Swan, XXXtreme agreed to enter the #30 car in every Sprint Cup race until it earned $200,000.00 in prize money. (Compl., ¶17). XXXtreme claims that it only agreed to pay Swan ten percent of the purse money earned by the #30 car during the remainder of the 2014 racing season. (Doc. 14, ¶16).

On April 26, 2014, XXXtreme raced a car bearing the #30 at Richmond International Speedway, the first race following the agreement. (Compl., ¶19). According to Swan, this was the first and last time that XXXtreme raced the #30, which XXXtreme denies. (Compl., ¶21; Doc. 14 ¶21). Swan alleges that XXXtreme, acting through its manager, Johnathan Cohen, transferred the points of the #30 car to XXXtreme's #44 car and raced the #44 in all subsequent races. Swan alleges that XXXtreme never paid Swan any prize money. (Compl., ¶¶20, 22).

Swan brought action in this Court against XXXtreme Motorsport with nine claims to relief. (Compl.). With respect to the above relevant facts, Swan brings claims against XXXtreme for breach of contract, Quantum Meruit in the alternative, and violation of the North Carolina Unfair and Deceptive Trade Practices Act. (Compl., ¶¶52, 86, 112). XXXtreme filed this action to

dismiss the claim for unfair and deceptive trade practices pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 22).

## B. XXXTREME'S COUNTERCLAIMS

During the time that Swan and XXXtreme were negotiating the sale of the #30 car in April, 2014, XXXtreme also agreed to lease a commercial property from Swan located in Statesville, North Carolina. (Compl., ¶29). Swan claims that XXXtreme further agreed to purchase a variety of consumable goods, including but not limited to sheet metal, duct components, drive shafts, batteries, brake components, rotors, shock parts, $CO_2$ filters, and lugnuts. (Compl., ¶29). XXXtreme denies such an agreement. (Doc. 16 ¶29). The parties also disagree as to the terms of the contract for the commercial property. Swan claims that XXXtreme agreed to sublease the property for $10,400.00 per month for rent with an additional monthly amount for XXXtreme's proportionate monthly share of taxes, utilities, and insurance. (Compl., ¶31). XXXtreme claims that it agreed to lease the property for $10,000.00 a month only. (Doc. 14 ¶30). XXXtreme occupied the property from April 23, 2014 until June 24, 2014 while using it as a race shop and base of operations. (Doc. 14 ¶10). XXXtreme sent Swan a check for $20,000.00 that XXXtreme claims was rent for the property, (Doc. 14 ¶11), though Swan claims that XXXtreme never indicated how the check was to be applied. (Compl.,¶40).

XXXtreme then makes the following factual assertions, all of which Swan denies. XXXtreme alleges that it tentatively agreed with Swan to purchase Swan's remaining assets for $600,000.00 to be paid out over a period of four months after contract execution. (Doc. 14 ¶12). XXXtreme alleges that Mr. Davis subsequently decided that he wanted the full amount at once, which XXXtreme refused. XXXtreme alleges that Mr. Davis then "orchestrated and directed Swan

Racing to lock XXXtreme Motorsport out of the [Statesville property] on or about June 24, 2014" and "refused to allow XXXtreme Motorsport any further access to the [p]remises." (Doc. 14 ¶13).

XXXtreme further alleges that it had racing equipment at the locked-out property, including but not limited to a fuel cell, brakes, pit jacks, wire harnesses, oil, renton springs, and other racing equipment. (Doc. 14 ¶15). According to XXXtreme, Swan eventually returned some but refused upon demand to return all of the equipment and instead "converted XXXtreme Motorsport's property for their own use." (Doc. 14 ¶¶16, 17). XXXtreme also alleges that Swan sold some of XXXtreme's equipment to third parties at the direction of Mr. Davis. (Doc. 14 ¶16).

XXXtreme brings a counterclaim/third-party complaint against Swan and Brandon Davis for (1) breach of contract; (2) conversion; and (3) unfair and deceptive trade practices. Swan and Davis concurrently move to dismiss the Second and Third Claims for Relief for failure to state a claim pursuant to Rule 12(b)(6), and Davis moves to also dismiss the First Claim for Relief as against him under 12(b)(6).

## II.  STANDARD OF REVIEW

The Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), this Court must "take the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). Although "heightened fact pleading of specifics" is not required for a complaint to survive a motion to dismiss under Rule 12(b)(6), the allegations must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering

the plausibility of a claim, the Court must "draw on its judicial experience and common sense" to determine whether the well-pleaded facts of the complaint "permit the Court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must disregard conclusory statements unsupported by factual allegations, but "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. Determining whether a claim states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III. DISCUSSION

#### A. SWAN RACING'S COMPLAINT

**1. Swan Racing states a claim for unfair and deceptive trade practices.**

N.C. Gen. Stat. §75-1.1, North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. §75-1.1. The elements of a claim for unfair or deceptive trade practices are: "(1) an unfair or deceptive act or practice by defendant, (2) in or affecting commerce, (3) which proximately caused actual injury to plaintiff." *White v. Thompson*, 676 S.E.2d 104, 108 (N.C. Ct. App. 2009) aff'd 691 S.E2d 676 (N.C. 2010). An act is deceptive "if it has a tendency or capacity to deceive." *Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F.Supp.2d 471, 477 (E.D.N.C. 2013). An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or amounts to an inequitable assertion of …power or position." *Id*. "What is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has in the marketplace." *Durling v. King*, 554 S.E.2d 1, 4

(N.C. Ct. App. 2001) (citing *Pan American World Airways, Inc. v. United States*, 371 U.S. 296 (1963)). A mere breach of contract, even if intentional, is not enough to sustain a claim for unfair and deceptive trade practices. *Branch Banking & Trust Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992).[1] A party must show substantial aggravating circumstances attending the breach of contract. *Id*. The courts have found that "[a]ggravating factors include an intentional misrepresentation for the purpose of deceiving another and which has a natural tendency to injure the other." *Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.,* 825 F.Supp.2d 664, 700 (M.D.N.C. 2011) (citing *Baldine v. Furniture Comfort Co*., 956 F.Supp. 580, 587-88 (M.D.N.C. 1996)). The Court finds that Swan Racing has alleged aggravating factors sufficient to survive a 12(b)(6) motion to dismiss.

Swan Racing alleges that XXXtreme Motorsport's actions were intentionally misleading at the time of contracting, which is the type of aggravating circumstance that can justify an UDTPA action. In *Baldine* and *Pan-American*, *supra*, the defendants obtained the contracts with the plaintiffs by promising to pay without any intention of ever doing so. Swan alleges the same here, specifically that XXXtreme "did not intend to perform the Agreement and abandoned and even frustrated the performance of the #30 Agreement within days of agreeing to its terms." (Compl., ¶109). Swan alleges that XXXtreme took Swan's asset without paying, stripped it of any of its value by transferring the points to the #44 car, and then frustrated the agreed payment method by not racing the #30 car. According to Swan, these actions can be seen as evidence that XXXtreme never intended to adhere to the contract, and that these actions plausibly give rise to an action for unfair and deceptive trade practices. This Court agrees.

---

[1] *See also Bob Timberlake Collection, Inc. v Edwards*, 626 S.E.2d 315, 323 (N.C. Ct. App. 2006); *Bartolomeo v. S.B. Thomas, Inc.* 889 F.2d 530, 535 (4th Cir. 1989); *Skinner v. E.F. Hutton & Co., Inc.,* 333 S.E.2d 236, 241 (N.C. Ct. App. 1985).

XXXtreme points to *Bartolomeo v. S.B. Thomas, Inc.* to argue that a "complete and abrupt abandonment of the contractual relationship" does not constitute a substantial aggravating circumstance giving rise to an unfair and deceptive trade practices claim in a contractual context. 889 F.2d 530, 535 (4th Cir. 1989). But the Court in *Bartolomeo*, reviewing a summary judgment motion, not a motion to dismiss, found that Bartolomeo had not actually been deceived because he received timely notice of his termination, which was the subject of the action. *Bartolomeo* is therefore inapposite, because the Court can make no finding at this stage in the process that XXXtreme did not intentionally deceive Swan during the negotiations for the #30 car. Swan also alleges more than merely an abrupt end to the contract, as detailed above.

For these reasons, Swan Racing's Ninth Claim for Relief for unfair and deceptive trade practices is not dismissed.

### B. XXXTREME MOTORSPORT'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT

#### 1. XXXtreme Motorsport states a claim for conversion.

"In North Carolina, conversion is generally defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *ACS Partners, LLC v. American Group, Inc.*, No. 3:09-CV-464, 2010 WL 883663, at *11 (W.D.N.C. March 5, 2010) (quoting *Peed v. Burleson's, Inc.,* 244 N.C. 437 (N.C. 1956)). "The tort of conversion requires two essential elements: ownership by the plaintiff and conversion by the defendant." *TSC Research, LLC v. Bayer Chemicals Corp.*, 552 F.Supp.2d 534, 542 (M.D.N.C. 2008) (citing *Lake Mary Ltd. Partnership v. Johnston*, 551 S.E.2d 546, 552 (N.C. Ct. App. 2001)). This Court finds that the facts, taken in the light most favorable to the plaintiff (XXXtreme and Johnathan Cohen in the counterclaim), give rise to a cause of action for conversion.

Swan Racing contends that XXXtreme's allegation of conversion was not pled with adequate specificity because XXXtreme only identified the property located at the premises prior to the lock-out, but did not specify what property was converted. The Court draws on its judicial experience and common sense in finding that XXXtreme's conversion counterclaim/third party complaint is sufficient. The goal of Federal Rule of Civil Procedure 8(a)(2) is to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 94 (2007) (citations omitted). Swan Racing cannot reasonably claim that they are not on notice of the property they are accused of converting – it is equipment stored at the premises, including but not limited to a fuel cell, brakes, pit jacks, wire harnesses, oil, renton springs, and other racing equipment. The fact that XXXtreme identifies this equipment in one paragraph but not the next does not render their claim implausible and subject to dismissal.

Swan would seem to hold that XXXtreme must specify how many of each item Swan converted, but this is clearly not the standard. *See McManus v. GMRI, Inc.*, No. 3:12-CV-009-DCK, 2012 WL 2577420, at *7-8 (W.D.N.C. July 3, 2012) (conversion claim not dismissed where property alleged to be converted included but was not limited to: "electrical equipment, light fixtures, and portions of the ventilating and air conditioning system"); *Eli Research, Inc. v. United Commc'ns Grp.*, LLC, 312 F.Supp.2d 748, 763 (M.D.N.C. 2004) (conversion claim not dismissed where property alleged to be converted was "confidential, private, secret, business information…").

Swan Racing further argues that XXXtreme is obligated to plead demand and refusal with greater particularity, including the date, time, and manner in which the demand was made. XXXtreme is not obligated, however, to plead demand and refusal at all. "When a party has allegedly received the materials in question pursuant to a contract, then demand and refusal is a

necessary element of the cause of action." *Hoch v. Young*, 305 S.E.2d 201, 203 (N.C. Ct. App. 1983) (additional citation omitted). XXXtreme does not claim that the allegedly converted property came into Swan's possession pursuant to a contract. XXXtreme alleges that Swan took the equipment from commercial property that XXXtreme was in lawful possession of. As such, demand and refusal is not a necessary element of the cause of action.[2]

For the above reasons, XXXtreme Motorsport's claim for relief for conversion as against Swan Racing and Brandon Davis is not dismissed.

### 2. XXXtreme Motorsport states a claim for unfair and deceptive trade practices.

The standard for unfair and deceptive trade practices is the same as in the above section. Additionally, the Court notes that a conversion of property may constitute a deceptive and unfair trade practice in North Carolina, but does not automatically create an UDTPA claim as a matter of law. *See Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co., Inc.*, 665 S.E.2d 478, 487 (N.C. Ct. App. 2008). "A conversion must include sufficiently aggravating circumstances to elevate the conversion to an unfair and deceptive trade practice and warrant the heightened damages of Chapter 75." *Id*. *See also Hancock v. Renshaw*, 421 B.R. 738 (M.D.N.C. 2009). This Court finds that XXXtreme has sufficiently alleged enough aggravating circumstances to survive a 12(b)(6) dismissal.

In this case, the Court is guided by *Love v. Pressley*, cited by both the Plaintiff and Defendant in this case. 239 S.E.2d 574, 583 (N.C. Ct. App. 1977). Swan argues that *Love* stands for the principle that "a finding of demand and refusal to return property was 'implicit' in determining that the conversion rose to the level of an unfair and deceptive trade practice." (Doc.

---

[2] The Court then need not address the issue of whether XXXtreme Motorsport pled demand and refusal with sufficient particularity.

27 at 7). Swan misreads the case, for *Love* only held that a finding that the defendant refused to return the property on demand was implicit in the jury verdict. *Love*, 239 S.E.2d at 583.[3] In *Love*, the North Carolina Court of Appeals said:

> In the instant case, the jury properly found facts that the defendant or his agent trespassed upon the premises rented to the plaintiffs and converted the personal property of the femme plaintiff. Implicit in the verdict as to the conversion is the finding that defendant refused to return the property upon demand. Also, it was stipulated that defendant did not evict plaintiffs from the premises pursuant to any judicial process…We hold that defendant's conduct constituted unfair or deceptive acts or practices in commerce…"

*Id*.

The actions of the landlord in *Love* are almost identical to the actions alleged against Swan in this case, including not just conversion of personal property, but also ostensible trespass and eviction without judicial process.

Swan also points to *House v. Federal Home Loan Mortg. Corp.*, No. 4:14-CV-129-D, 2015 WL 135979 (E.D.N.C. Jan. 9, 2015). In *House* the Eastern District of North Carolina notes that "[m]ost cases upholding an UDTPA claim in a landlord-tenant context involve situations where 'the residential rental premises were unfit for human habitation and the landlord was aware of needed repairs.'" *Id*. at 9. (quoting *Foy v. Sprinks*, 414 S.E.3d 87, 90 (N.C. Ct. App. 1992). The Eastern District goes on to say, however, that "UDTPA claims involving landlords and tenants are not limited to the *Foy* context." *Id*. The present case is easily distinguished from *House*. In that case, equitable title transferred to Freddie Mac in a foreclosure action and Freddie Mac brought an ejectment notice against the plaintiffs through the sheriff and county clerk's office. That set of

---

[3] In any case, this Court does not find that XXXtreme failed to plead demand and refusal with sufficient particularity. Swan further argues that the UDTP claim cannot stand on XXXtreme's conversion claim because the conversion claim is insufficient, but the Court has already determined that the conversion claim is well-pled.

facts is far less indicative of aggravating circumstances than the lock-out and conversion that is alleged here.

Further, assuming the allegations of XXXtreme to be true in the present case, Brandon Davis is responsible for the trespass giving rise to an UDTPA action because he personally orchestrated it. Swan fails to cite any case law that indicates that Davis cannot be liable even if Swan is found liable. As such the action against Davis shall go forward.

Accordingly, this Court finds that XXXtreme Motorsport has adequately pled aggravating circumstances and its unfair and deceptive trade practices claim as against Swan Racing and Brandon Davis is not dismissed.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss the Complaint's Ninth Claim for Relief is hereby **DENIED**; and Plaintiff's/Third-Party Defendant's concurrent Motions to Dismiss the Counterclaim/Third Party Complaint's Second and Third Claims for Relief are **DENIED.**

Signed: July 20, 2015

Richard L. Voorhees
United States District Judge