# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE NO. 5:14-CV-00155-RLV-DCK

| | |
|---|---|
| SWAN RACING COMPANY, LLC, | ) |
| | ) |
| Plaintiff/Counter Defendant, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| | ) |
| XXXTREME MOTORSPORT, LLC AND | ) |
| JOHNATHAN COHEN, | ) |
| | ) |
| Defendants/Counter | ) |
| Claimants/Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BRANDON DAVIS, | ) |
| | ) |
| Third-Party Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on a Motion for Sanctions by Plaintiff/Counter Defendant Swan Racing Company ("Swan") and Third-Party Defendant Brandon Davis (Doc. 52) and Motions for Summary Judgment by Swan and Davis (Docs. 54, 55). The time for Defendants to file responses, as extended by this Court's orders of July 29, 2016 and August 31, 2016, having elapsed, the motions are now ripe for disposition. For the reasons stated below, the Motion for Sanctions (Doc. 52) is **GRANTED IN PART AND DEFFERRED IN PART** and the Motions for Summary Judgment (Docs. 54, 55) are **DENIED AS MOOT**.

1

## I. FACTUAL BACKGROUND

Swan is a limited liability company that owned and operated the #30 race team in the Sprint Cup Series of NASCAR ("NASCAR"). (Doc. 1 at 1-2; Doc. 57 at 1). Brandon Davis was the "managing member of and primary decision maker for" Swan at all times relevant to this litigation. (Doc. 57 at 1). XXXtreme Motorsport, LLC ("XXXtreme") is a limited liability company, managed by Johnathan Cohen, that also operated racing teams in NASCAR. (Doc. 1 at 1; Doc. 19 at 2).

In April 2014, Swan decided to discontinue its racing operations in NASCAR and commenced liquidating its racing equipment. (Doc. 57 at 1). Swan alleges, and XXXtreme and Cohen admit, that Swan agreed to sell the #30 race number to XXXtreme. (Doc. 1 at 2; Doc 19 at 3). Swan alleges that the sale agreement obligated XXXtreme to race the #30 car and created a payment structure wherein XXXtreme would pay Swan ten percent of the #30 car's race winnings until it paid off the purchase price of $200,000. (Doc. 1 at 2; Doc. 57 at 2). Swan also orally agreed to sublease commercial space and car equipment to XXXtreme. (Doc. 1 at 3-4; Doc. 19 at 5). Finally, Swan alleges that after the transfer of the #30 car to XXXtreme but prior to NASCAR approving the sale of the #30 car number, Swan paid race entry fees for the car and that XXXtreme agreed to reimburse Swan for those entry fees. (Doc. 1 at 3; Doc. 57 at 3-4). After the sale of the #30 race number, XXXtreme raced the #30 car in one NASCAR race and then transferred the points associated with the #30 race team to XXXtreme's #44 race team. (Doc. 1 at 2-3; Doc. 19 at 4). Swan contends that XXXtreme, at the time it entered into the sale agreement for the #30 car, intended to race the #30 car only once and then transfer the points to the #44 race team, thus acquiring and then devaluing the #30 car. (Doc. 1 at 10-11; Doc. 56 at 11-12; Doc. 57 at 3).

At the center of Swan's complaint are disputes over the terms of payment under the sale agreement and the oral sublease agreement, the reimbursement of race entry fees, and the contractual obligations placed on XXXtreme to race the #30 car. (*See* Doc. 1 at 3-4; Doc. 19 at 4-7). As against XXXtreme, Swan's complaint consists of (1) four breach of contract claims (sale agreement of #30 car, sublease of commercial space, use of car equipment within commercial space, and reimbursement of race entry fees) (Claims One through Four); (2) four alternative claims sounding in quantum meruit for the items underlying the alleged agreements in the contract claims (Claims Five through Eight); and (3) a claim alleging an Unfair and Deceptive Trade Practice (UDTP) under N.C. Gen. Stat. § 75-1.1, et seq. (Claim Nine) (Doc. 1 at 5-12). Swan only brings Claim Nine, the UDTP claim, against Cohen. *Id.* at 10-11.

As part of their amended answer to Swan's complaint, XXXtreme and Cohen raise three counterclaims/third-party claims against Swan and Davis respectively. (Doc. 19 at 20-22). The first of the claims alleges that Swan and Davis breached the sublease agreement for the commercial space by locking XXXtreme out of the space. *Id.* at 20. The second claim is for conversion and alleges that, when Swan and Davis locked XXXtreme out of the commercial space, Swan and Davis refused to permit XXXtreme to remove its equipment from the space and either used or sold XXXtreme's equipment. *Id.* at 20-21. In their third, and final, claim, XXXtreme and Cohen assert that Swan and Davis's breach of the sublease agreement constituted an UDTP. *Id.* at 21-22.

## II. PROCEDURAL BACKGROUND

Swan commenced this action by filing its complaint on September 24, 2014. (Doc. 1). The complaint was served on Defendants on September 26, 2014, making Defendants' answers to the complaint due on October 17, 2014. (*See* Doc.57); *see also* Fed. R. Civ. P. 12(a)(1)(A)(i) (allowing 21 days from service for filing of answer). On October 15, 2014, Cohen, appearing pro se, filed a

motion to extend the time to answer the complaint, asserting that he was still in the process of finding legal counsel in North Carolina. (Doc. 6 at 1). This Court granted the motion to extend and established a new deadline of November 14, 2014, for Defendants to file their answers to the complaint. (Doc. 7). November 14, 2014, came and went without Defendants filing their answers or otherwise communicating with the Court. On November 18, 2014, Cohen filed a letter asking for a second thirty-day extension for Defendants to file answers to the complaint, citing his continued difficulty in retaining legal counsel in North Carolina as the basis for the extension. (Doc. 8). The Court granted, with modification, the motion for a second extension and gave Defendants until December 5, 2014, to file their answers to the complaint. (Doc. 9). The Court's order also advised Defendants that "[f]urther extensions of this deadline are unlikely." *Id.* December 5, 2014, came and went without Defendants filing their answers or otherwise communicating with the Court. On December 10, 2014, Drew Alan Richards entered an appearance on behalf of Defendants and filed an answer to the complaint, which included XXXtreme and Cohen's counterclaim and third-party complaint.[1] (Docs. 12, 14).

Swan and Davis filed motions to dismiss XXXtreme and Cohen's counterclaim and third-party complaint respectively and XXXtreme and Cohen filed an amended answer, timely responded to the motions to dismiss, and filed a motion to dismiss Swan's UDTP claim. (Docs. 16-17, 19-20, 22, 25-26, 28). This Court denied the motions to dismiss and counsel for the parties held an initial conference at which they formulated a discovery plan and pretrial schedule. (Doc. 34). This Court issued a pretrial order adopting the parties' proposed pretrial deadlines and setting a trial ready date of September 12, 2016. (Doc. 35). Under the order, the parties were to complete discovery by February 29, 2016, and the filing of motions and mediation were to be completed by

---

[1] Defendants never filed a motion seeking an extension of the December 5, 2014, deadline to file their answers. *See* Fed. R. Civ. P. 6(b)(1)(B).

March 31, 2016. *Id.* at 2-4. The pretrial order warned the parties that "[f]ailure to comply with any of the provisions of this Order which causes added delay or expense to the Court may result in the imposition of sanctions as provided by the Federal Rules of Civil Procedure." *Id.* at 8.

On February 12, 2016, with the close of discovery deadline looming, Swan and Davis filed a consent motion to extend the pretrial deadlines. (Doc. 36). The motion indicated that disputes existed regarding Defendants' discovery responses and Swan and Davis "agreed to allow Defendants until February 26, 2016 to supplement their responses in hopes of resolving the current discovery dispute." *Id.* at 2. This Court granted the motion to extend the pretrial deadlines, setting a new discovery deadline of April 30, 2016, and a new motions and mediation deadline of May 31, 2016. (Doc. 37).

On March 18, 2016, the discovery dispute having not been resolved, Swan and Davis filed a motion to compel. (Doc. 38). Responses from Defendants to the motion to compel were due on April 4, 2016. (*See* Doc. 41). On March 28, 2016, Richards, citing Defendants' failure to fully compensate him and failure to provide him with a retainer to cover fees and expenses, moved to withdraw as counsel for Defendants. (Doc. 40). Identifying procedural deficiencies in the motion to withdraw, this Court denied the motion without prejudice. (Doc. 41). Attorney Richards filed a renewed and amended motion to withdraw that reasserted his original basis for withdrawing and represented that Defendants were "unwilling or unable" to provide him with the discovery information sought by Swan and Davis. (Doc. 42 at 2). The Court issued a show cause order giving Defendants until April 25, 2016, to demonstrate why Richards should not be permitted to withdraw from representation and extending the deadline for Defendants to respond to the motion to compel discovery to May 2, 2016. (Doc. 43). In the order, the Court noted that "Defendants' alleged failure to participate in their defense or cooperate with their counsel appears to be causing

5

unnecessary delays in this litigation." *Id.* at 2. The order further advised Defendants "that they are required to cooperate in the discovery process" and warned Defendants that "failure to provide or permit discovery may result in sanctions including the following: reasonable expenses caused by the failure; default judgment against the disobedient party; or treating as contempt of court the failure to obey any order." *Id.* at 2-3 (citing Fed. R. Civ. P. 37(b)(2)(A), (d)). Defendants did not submit any filings.[2]

On May 3, 2016, the Court issued an order granting Richards's motion to withdraw and granting Swan and Davis's motion to compel. (Doc. 47). The order directed Defendants to (1) supplement their discovery responses by May 17, 2016; (2) have new counsel file a notice of appearance by May 17, 2016; and (3) pay the reasonable expenses incurred by Swan and Davis in pursuing the motion to compel. *Id.* at 3-4. The order also labeled Defendants' conduct as "dilatory" and warned them that further failure to adhere to court orders will result in additional sanctions. *Id.* at 3. The certified mailings to Defendants with the order granting the motion to withdraw and the motion to compel were returned as unclaimed and undeliverable. (Doc. 48-51).

The deadlines in the Court's May 3, 2016, order came and went without any contact from or action by Defendants. Furthermore, Defendants did not attend depositions or mediation. (*See* Doc. 52, Exs. 7, 8 (deposition transcripts); Doc. 59 at 2 (affidavit of counsel for Swan and Davis attesting that Defendants did not attend mediation)). On June 24, 2016, Swan and Davis filed the

---

[2] Swan and Davis filed a response to the renewed motion to withdraw, in which they indicated that they (1) did not oppose the motion so long as granting the motion did not further delay proceedings; (2) served notices of depositions on Defendants for April 27, 2016; and (3) believed "Defendants behavior in responding to discovery and participating in this lawsuit reflects a consistent pattern of inaction and non-responsiveness designed to prolong or delay obligations and outcomes both within and without th[e] litigation." (Doc. 44 at 2-3). Richards, on behalf of Defendants, filed a motion to extend the pretrial deadlines because Cohen was unavailable on the date identified in the notices of depositions. (Doc. 45). The motion represented that Cohen requested that the deposition be moved to May 25, 2016, and that Swan agreed to accommodate Cohen's request. *Id.* at 2. This Court denied the motion to extend without prejudice because Defendants had not responded to the motion to compel; however, the Court noted that the pretrial order allowed the parties to consent to a deposition date beyond the discovery deadline. (Doc. 46).

6

pending motions for sanctions and for summary judgment. (Docs. 52, 54-55). In the motion for sanctions, Swan seeks a default judgment in its favor on the claims raised in its complaint and Swan and Davis seek dismissal of XXXtreme and Cohen's counterclaim and third-party complaint, as well as reasonable expenses, including attorney's fees, stemming from Defendants' failure to comply with the order compelling discovery and failing to attend depositions and mediation. (Doc. 52 at 7-8).

A Court order established July 29, 2016, as the deadline for Defendants to respond to Swan and Davis's motions and advised Defendants that the "[f]ailure to file timely and persuasive responses will likely lead to Plaintiff and Third-Party Defendant being granted the relief they seek." (Doc. 58). On July 29, 2016, this Court received two letters: a letter from Robert W. Piken, an attorney from New York and not barred in North Carolina, representing that he was trying to assist Cohen in obtaining new counsel and a letter form Cohen implicitly indicating that he was unaware that Richards's motion to withdraw was granted and asking for an extension until August 19, 2016, to respond to Swan and Davis's motions. (Doc. 60, 62). This Court construed Cohen's letter as a motion for an extension of time and granted the motion with modification, giving Defendants until August 15, 2016 to file their responses to Swan and Davis's motions. (Doc. 63).

As with most every other deadline, August 15, 2016, came and went with no submissions from Defendants. On August 19, 2016, the date to which Cohen unsuccessfully requested an extension, Attorney Piken entered an appearance.[3] (Doc. 66). On August 23, 2016, Attorney David William Hands filed a notice of appearance as local counsel on behalf of Defendants. (Doc. 67). Also on August 23, 2016, Piken filed a letter requesting that the already once-extended deadline for Defendants to respond to the motions be extended a second time, with a proposed new

---

[3] Piken's notice of appearance occurred two months after the Court-imposed deadline for Defendants to file a notice of appearance of new counsel. (*See* Doc. 47 at 4).

deadline of September 26, 2016. (Doc. 69). This Court denied the request without prejudice because the letter did not comply with the Local Rules governing motions for extensions.[4] (Doc. 71). On August 29, 2016, Defendants filed a new motion to extend that complied with the Local Rules but did not identify a specific date through which the extension was sought. (Doc. 72). In an effort to give Defendants one final opportunity to respond to the motion for sanctions and the motions for summary judgment, the Court granted Defendants' motion for an extension, extending the deadline for responses to September 19, 2016. (Doc. 74). The order, however, warned that "[f]urther extensions will not be allowed." *Id.* As of the date of this order, Defendants have not filed any responses.

## III. DISCUSSION

In their motion for sanctions, Swan and Davis contend that Defendants' general refusal to participate in the litigation, including their failure to respond to discovery requests and the Court's order compelling discovery, justifies (1) striking Defendants' amended answer, affirmative defenses, counterclaim, and third-party complaint; (2) dismissing Defendants' counterclaim and third-party complaint; (3) entering a default judgment in favor of Swan on Swan's complaint—specifically with damages on Claims Two, Three, Four, and Nine; and (4) awarding reasonable expenses, including attorney fees, related to Defendants' failure to comply with the order compelling discovery and their failures to attend depositions and mediation. (Doc. 52 at 7-8). With respect to the entry of default judgment, Swan seeks a total principal judgment of $688,519.20 against XXXtreme and a total principal judgment of $600,000.00 against Cohen, as

---

[4] The Court also indicated a reluctance to grant the extension as requested, partially because the requested deadline of September 26, 2016, would result in the motions becoming ripe very close to the already once-delayed trial ready date of October 31, 2016. (Doc. 71 at 2).

well as applicable interest on all claims and reasonable attorney's fees on its UDTP claim.[5] (Doc. 1 at 5-12; Doc. 52 at 6-7).

Rule 37(b) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:
>
> . . .
> (iii)   striking pleadings in whole or in part;
> . . .
> (v)    dismissing the action or proceeding in whole or in part; [or]
>
> (vi)   rendering a default judgment against the disobedient party[.]

Fed. R. Civ. Pro. 37(b)(2)(A). Rule 37 also provides that "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Pro. 37(b)(2)(C). Furthermore, where a party fails to attend its own deposition or serve answers to interrogatories, the Court may impose any of the sanctions available under Fed. R. Civ. P. 37(b)(2)(C) and the same requirement is placed on the court with respect to the award of related reasonable expenses, including attorney's fees. Fed. R. Civ. P. 37(d)(1).

The Court typically has broad discretion to impose sanctions on a party who fails to comply with its discovery orders. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995). However, "[w]hen the sanction involved is judgment by default, the district court's range of discretion is more narrow because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Mut. Fed. Sav.*

---

[5] As to XXXtreme, Swan seeks $200,000.00 on the sale agreement for the #30 car, $27,052.20 on the commercial sublease agreement, $51,827.00 for the car equipment, and $9640.00 for the race entry fees. (Doc. 1 at 5-8). Should Swan prevail on its UDTP claim, Swan seeks $200,000.00, trebled to $600,000.00, in lieu of the $200,000.00 it seeks on its breach of contract claim regarding the sale agreement for the #30 car. (Doc. 52 at 7); *see* N.C. Gen. Stat. § 75-16 (permitting treble damages). As to Cohen, Swan seeks $200,000.00, trebled to $600,000.00, on its UDTP claim. (Doc. 52 at 7).

*& Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (internal quotation marks omitted) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-04 (4th Cir. 1977)). The sanction of default judgment "should normally not be imposed so as to foreclose the merits of controversies as punishment for general misbehavior save in that rare case where the conduct represents such flagrant bad faith and callous disregard of the party's obligation under the Rules as to warrant the sanction not simply for the purpose of preventing prejudice to the discovering party but as a necessary deterrent to others." *Wilson*, 561 F.2d at 504 (citation and internal quotation marks omitted). When considering whether to impose the sanction of default judgment or dismissal, a court shall apply a four-part test that evaluates:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Richards & Assocs.*, 872 F.2d at 92; *see also Anderson v. Found. For Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998).

The Court concludes that the four-part test supports granting default judgment in favor of Swan on its claims and dismissing XXXtreme and Cohen's counterclaim and third-party complaint. Looking at the first part of the test, "a pattern of indifference and disrespect to the authority of the court" can support a finding of bad faith. *Richards & Assocs.*, 872 F.2d at 93. As detailed *supra* in the procedural history section, Defendants repeatedly missed deadlines, submitted fillings on the schedule they preferred rather than the schedule adopted by the Court, did not appear for depositions despite the depositions being scheduled on a date of Cohen's choosing, and appear unfazed by the Court's warnings about sanctions. In the course of this proceeding, Defendants have unilaterally sought and received five extensions, repeatedly allowed

deadlines to elapse without filing a required submission or seeking an extension of the deadline, and failed to file responses to this Court's show cause order and to Swan and Davis's three most recent motions. Of these extensions and elapsed deadlines, three of the extensions and two of the elapsed deadlines pertain to matters tied to the discovery process and/or delayed the discovery process. Further, the few fillings in response to discovery requests that Defendants provided were wholly inadequate and Defendants failed to supplement their responses as required by this Court's order granting Swan and Davis's motion to compel. (*See* Doc. 38, Exs. C-G); *see, e.g.*, *Anderson*, 155 F.3d at 504 (default judgment appropriate where party "stonewalled on discovery from the inception of the lawsuit" and continued to miss court-ordered deadlines); *Water Out Drying Corp. v. Allen*, 2007 WL 2746889, at *1 (W.D.N.C. Sept. 19, 2007) (failing to provide answers to discovery requests despite a clear court order constitutes "bad faith")*; Green v. John Chatillon & Sons*, 188 F.R.D. 422, 424 (M.D.N.C. 1998) ("Noncompliance with discovery orders can serve as a basis for a finding of bad faith."). Finally, in the face of the Court's patience and repeated efforts to permit Defendants to oppose discovery efforts and sanctions, raise meritorious defenses, and pursue their claims, Defendants, other than when filing motions for extensions, have remained largely silent in what amounts to at least a pattern of indifference but may more appropriately be viewed as representative of an effort to intentionally delay this proceeding. Accordingly, the first part of the test favors granting a default judgment in favor of Swan and dismissing Defendants' claims.

Looking at the second factor, the trial ready date in this over two-year-old case was postponed from September 12, 2016 to October 31, 2016. As of the date of this order, trial was scheduled to commence within twenty days. Yet, despite the age of this case, Defendants have not provided Swan and Davis any meaningful discovery such that Swan and Davis would, absent

this Court granting their motion for sanctions, be forced to choose between guessing as to the evidence Defendants might seek to present at trial and asking for a continuance of the trial date with the hope, albeit extremely minimal, that Defendants might choose to adequately respond to the discovery requests and motions before a later trial ready date. *See Lynch v. Novant Med. Grp., Inc.*, 2009 WL 2915039, at *7 (W.D.N.C. Sept. 8, 2009) (finding the inability to obtain complete discovery responses prejudicial). In light of the considerable delays and extensions of time already granted in this case, almost all entirely at the hands of Defendants, any further delay in adjudication would most certainly rise to the level of "justice delayed is justice denied." Accordingly, the second part of the test favors granting a default judgment in favor of Swan and dismissing Defendants' claims.

Turning to the third part of the test, a stiff sanction is necessary in this case to deter similar conduct by other parties in other cases. As stated by the United States Court of Appeals for the Fourth Circuit, "not only does the noncomplying party jeopardize his or her adversary's case by such indifference [to the court's orders], but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct." *Richards & Assocs.*, 872 F.2d at 92 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)). The Defendants conduct has repeatedly impeded this Court's ability to manage the case, forcing the Court to alter the case management plan, push back the trial ready date for this over two-year-old case, and rule on dispositive motions in close proximity to the existing trial ready date. *See e.g. Ellis v. Wal-Mart Distributions*, 2011 WL 3804233, at *2 (W.D.N.C. Aug. 2, 2011) (magistrate judge R&R finding need to deter where party's delay undermined Court's ability to manage the case) (*adopted sub nom by Ellis v. Distrib. Tech., Inc.*,

2011 WL 3804233 (W.D.N.C. Aug. 29, 2011). Therefore, the third part of the test favors granting a default judgment in favor of Swan and dismissing Defendants' claims.

Finally, with respect to the fourth part of the test, it is apparent that no sanction short of default judgment on Swan's claims and dismissal of Defendants' claims will be effective. This Court already imposed the lesser sanction of holding Defendants responsible for Swan and Davis's reasonable expenses, including attorney's fees, for Defendants' failure to comply with Swan and Davis's discovery requests. (Doc. 47). Furthermore, the Court has repetitively warned Defendants that their failure to comply with the Court's order would result in additional sanctions, including the entry of a default judgment, yet Defendants have shown little or no intent of complying with this Court's orders. *See Anderson*, 155 F.3d at 505 (holding that where sanction of attorney fees in combination with threat of default judgment does not deter party, default judgment is appropriate "last-resort sanction"); *Hathcock*, 53 F.3d at 40 (requiring clear warning by court before imposing default judgment sanction); *see also Viswanathan v. Scotland Cty. Bd. of Educ.*, 165 F.R.D. 50 (M.D.N.C. 1995) (case dismissed after explicit warning from court that further non-compliance would result in dismissal), aff'd by 76 F.3d 377 (table), 1996 WL 36916 (4th Cir. Jan. 31, 1996)); *Green*, 188 F.R.D. 422 (same).

For these reasons, the Court finds it appropriate to (1) **STRIKE** Defendants' amended answer to Swan's complaint; (2) **GRANT A DEFAULT JUDGMENT** in favor of Swan, with an award of damages on Claims Two, Three, Four, and Nine; (3) **DISMISS** XXXtreme and Cohen's counterclaim and third-party complaint; and (4) **DEFER** action on Swan and Davis's requests for interest on Claims Two, Three, Four, and Nine, request for attorney fees on Claim Nine, and request for reasonable expenses, including attorney's fees, under Fed. R. Civ. P. 37. The default judgment against XXXtreme shall be based on a total principal judgment of $688,519.20, and the

default judgment against Cohen shall be based on a total principal judgment of $600,000.00.[6] Additionally, Defendants shall be responsible for Swan and Davis's reasonable expenses, including attorney's fees, related to Defendants' failure to comply with the order compelling discovery and for Defendants' failure to attend mediation and to attend depositions. Swan and Davis shall submit a memorandum outlining Swan's basis for entitlement to pre-judgment interest, providing calculations regarding the rate and amount of interest Swan claims it is entitled to, and outlining the attorney's fees Swan may recover under Claim Nine and the reasonable expenses, including attorney's fees, Swan and Davis may recover under Fed. R. Civ. P. 37.[7]

IV. **DECRETAL**

**IT IS, THEREFORE, ORDERED THAT**

(1) Swan and Davis's motion for sanctions (Doc. 52) is **GRANTED IN PART AND DEFFERRED IN PART**.

(2) Swan and Davis's motions for summary judgment (Docs. 54, 55) are **DENIED AS MOOT.**

---

[6] Granting a default judgment and dismissing XXXtreme and Cohen's claims renders Swan and Davis's motions for summary judgment moot because Swan and Davis are unable to obtain further relief through those motions.

[7] The Court notes that Swan and Davis's attorney filed an affidavit indicating a total attorney fee of $77,226.00 for the case, with $14,649.55 attributable to the motion to compel and motion for sanctions. (Doc. 59). The Court, however, is unable to determine the reasonableness of the asserted fees where the affidavit does not provide any information regarding the number of hours counsel, and his associates and staff, spent working on each aspect or motion of the case or the hourly rate charged for the relevant legal services. Furthermore, the affidavit either does not differentiate between expenses and attorney's fees or does not include any figures regarding expenses, such that the Court is presently unable to fashion a judgment fully encompassing Swan and Davis's right to relief. Finally, Swan and Davis have not submitted an affidavit from an independent attorney, who practices in the area, attesting to the reasonableness of the requested attorney fees. *See Howard's Yellow Cabs, Inc. v. United States*, 1998 WL 682485, at *5 (W.D.N.C. Mar. 19, 1998); *see also Joe Hand Promotions, Inc. v. KJ'z Wings & Ale, LLC*, 2015 WL 1549105, at *3 (D.S.C. Apr. 8, 2015); *Hart's Rocky Mountain Retreat, Inc. v. Gayhart*, 2007 WL 2491856, at *3 (D. Colo. Aug. 29, 2007).

(3) Swan and Davis shall submit the requested memorandum on interest and attorney's fees, as well as an affidavit from an independent attorney attesting to the reasonableness of the requested attorney's fees, no later than October 26, 2016.

Signed: October 11, 2016

Richard L. Voorhees
United States District Judge